IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RASHAAN G. VAUGHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00478 |
| | ) | |
| COMMONWEALTH OF VIRGINIA, *et al.*, | ) | By: Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Rashaan Vaughn brings this action against her former employer, the Commonwealth of Virginia, and James Granger, her former manager. She asserts a claim of sexual harassment and hostile work environment under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*, against the Commonwealth, and a claim of assault and battery against the Commonwealth and Granger. (Am. Compl., Dkt. No. 32.) Pending before the court is defendants' motion for summary judgment, seeking judgment as a matter of law on both claims. (Dkt. No. 90.) The motion has been fully briefed and argued. For the reasons set forth below, the court will deny defendants' motion.

I. BACKGROUND

This action arises out of Rashaan Vaughn's employment with the Virginia Department of Veterans Services (DVS),[1] beginning in July 2015. At the start of her employment, Vaughn worked as a Veterans Service Representative in DVS's Salem office. (Vaughn Dep. 34, Dkt. No. 93-1.) James Granger worked for DVS as the Deputy Director of Benefits and as Chief of the

_____

[1] DVS is a statutorily created department of the Commonwealth of Virginia.

1

DVS Center of Excellence, located in Roanoke. (Granger Dep. 38, Dkt. No. 91-2.)

At first, Vaughn saw Granger three to four times per month. Granger would hug her, on average, every other time they saw each other. Vaughn considered these hugs to be more of a greeting at first, but considered his kisses on the cheek to be more affectionate. She told some coworkers about Granger's actions. In February 2016, she told Chris Mackey, another employee, that Granger "was getting a little too close for comfort" and making her feel "uncomfortable" and not "safe in the environment." During this time, Vaughn was "starting to feel a little uncomfortable," but felt like she "was getting through it." (Vaughn Dep. 50, 62–64, 66–67, 81–82, 102.)

Vaughn alleges that in May 2016, Granger kissed her on the lips. She told several coworkers about this incident, including Jonica Wilson, who she called right after the incident when she was "frantic" and "crying." None of the people she told were in Human Resources, although Vaughn knew that she needed to speak with someone in Human Resources to report a coworker's behavior. (*Id.* at 60–61, 81–85, 118–19; Wilson Dep. 13, Dkt. No. 93-4.) During the same month, Vaughn sent Granger several emails that did not appear to express any discomfort with him; to the contrary, they said "XOXO."[2]

In June 2016, Vaughn applied for and accepted a position as a Benefits Claim Specialist at DVS's Center of Excellence in Roanoke, where Granger worked. Granger became Vaughn's direct supervisor at the Center of Excellence. (Granger Dep. 43.)

---

[2] On May 6, 2016, Vaughn emailed Granger saying: "XOXOXOXOXO!!! I can't think of anyone who can get a 'point' across better than you. ☺ You are always rocking. Thank you sweetie." (Dkt. No. 91-16.) On May 18, 2016, Vaughn emailed Granger saying: "XOXOX!!! LOVE YA AND THANKS SO MUCH!!" (Dkt. No. 91-17.) And on May 19, 2016, Vaughn emailed Granger saying: "Jim you already know about XOXOXO… ☺ . . . I really miss you, I didn't realize how attached I have grown to you. I try not to show it much but I think it is obvious." (Dkt. No. 91-19.)

Granger regularly gave hugs and kisses on the cheek and forehead to women in the office. (Burch Decl. ¶ 3 Dkt. No. 91-4; Smither Decl. ¶ 4, Dkt. No. 91-5; White Decl. ¶ 5, Dkt. No. 91-6.) DVS employees and management witnessed his behavior. Vaughn saw Granger hugging employees and saw him kiss one coworker on the lips. (Vaughn Dep. 65.)

Numerous other employees also testified that they observed him hugging or kissing Vaughn or other women, including kisses on the lips, cheek, and forehead. (Sessoms Dep. 15, 19–21, Dkt. No. 93-10 (Sessoms recalled a training session where Granger went around the table and "hugged and kissed each female there," saw Granger kiss a female employee on the face, and testified: "everywhere that we go, we always see Jim kissing the women there"); Back Dep. 130, 188, Dkt. No. 93-16 (Rhonda Back testified that she saw Granger hug and kiss other employees on the cheek and forehead and that she saw him hug and kiss Vaughn on the cheek or forehead); Carter Dep. 22–23, Dkt. No. 93-4 (Jonica Wilson Carter testified that Granger "was a hugger . . . he always hugged everybody," and that she saw him hug women in the office and kiss another female employee on the cheek); Wade Dep. 13–14, Dkt. No. 93-11 (Candi Wade saw Granger kiss several other women in the office); Crone Dep. 19, Dkt. No. 93-12 (Michelle Crone, the Northern Regional Manager, received hugs from Granger and saw him hug other women in the office); Williams Dep. 12–13, Dkt. No. 93-13 (Donna Williams saw Granger hug other employees and hugged him every time that they would meet); Zirkle Dep. 8–10, Dkt. No. 93-14 (Pamela Zirkle saw Granger hug and kiss female employees on the forehead, head, and cheek "many times," and saw him kiss Candi Wade on the lips); Disbennett-Albrecht Dep. 48–50, Dkt. No. 93-7 (Brandy Disbennett-Albrecht, who was in management, saw him hug "just about everybody in the office" and saw him kiss Jenny White on top of her head).)

Other female employees testified that they themselves were kissed. (Back Dep. 126, 130, 145, 187–88 (Granger kissed her on the lips, cheek, and forehead); Cates Dep. 25–26, Dkt. No. 93-5 (Granger hugged and kissed Lisa Cates on top of her head every time he saw her); Wade Dep. 13 (Granger kissed her on the cheek and sometimes on top of her head when he saw her); Disbennett-Albrecht Dep. 48–50 (Disbennett-Albrecht was kissed by Granger on the cheek and on the lips).)

Significantly, moreover, at least some of these incidents were observed by management. (Back Dep. 145–46, 254, 256 (explaining that she saw Tom Herthel, the Director of the Agency, standing nearby when Granger hugged her or gave her a kiss on the cheek or forehead and when he hugged and kissed other women on the cheek or forehead, and that she saw Lisa Cates, the Human Resources director, standing nearby when Granger hugged and kissed women on the cheek or forehead); Cates Dep. 29–30 (testifying that she saw Granger hug employees in front of Tom Herthel; Herthel Dep. 49–50, 73–74, Dkt. No. 93-15.) Indeed, some members of management testified that they knew of Granger's habits of hugging and kissing employees, and Tom Herthel, the Director of the Agency, does not recall ever telling Granger not to hug coworkers. (Cates Dep. 22–23, 25, 29 (Lisa Cates saw him hug the majority of DVS employees and believed it was common knowledge throughout the office that Granger hugged employees); Herthel Dep. 49–50, 73–74 (Tom Herthel saw Granger hug "most all of [the] employees").)

In his deposition, Granger explained that he believed that a "kiss or [sic] the forehead, a kiss on the cheek, is one thing," but that a "kiss on the lips is strictly off bounds." He also stated that he has kissed two DVS employees on the lips, though he considered those kisses to be "simply a greeting" and "not a sexual act at all." (Granger Dep. 108, 139.)

4

Between Granger's kiss on the lips in May 2016 and April 2017, Vaughn states that Granger hugged her, kissed her on the cheek, and made comments to her. Vaughn alleges that Granger's kisses on her cheeks "intensified," and that he would hold her tight when he hugged her. She tried to "blank it out of [her] brain" and tried not "to think about it." (Vaughn Dep. 142, 189–90.) During this time, Vaughn continued to send Granger emails that expressed no discomfort, referred to missing him, and said "XOXO."[3]

On April 4–5, 2017, DVS hosted an offsite meeting at the Boar's Head Inn in Charlottesville. Sometime after this meeting, Vaughn left a handwritten note with a Hershey's kiss on Granger's desk that said: "Let's go back to Boar's [Head] and have fun with travel later." (Dkt. No. 91-28; Dkt. No. 93-17; Vaughn Dep. 278; Granger Dep. 173–74.) According to Vaughn, she meant that they should go back to the Boar's Head Inn, where they had relaxed during the work meeting, and complete the travel paperwork that was awaiting them in the office, later. (Vaughn Dep. 280–85.) Granger believed this note was "the type of flirtation that [Vaughn] was prone to." (Granger Dep. 235.)

Vaughn alleges that during the week of April 24–28, 2017, Granger kissed her on the lips every day.[4] That "week of April is what really, really broke [her]." Vaughn states that toward

---

[3] On July 8, 2016, Vaughn emailed Granger saying: "XOXOXOXOXOX!!! Wishing you a wonderful relaxing weekend. Missed you and glad you are back." (Dkt. No. 91-20.) On July 11, 2016, she emailed Granger saying: "I always get a little ☹ when you go.. but I know I will see you soon. . . . XOXO." (Dkt. No. 91-21.) On September 22, 2016, Vaughn emailed Granger saying: "Miss you, XOXOX!!!" (Dkt. No. 91-25.) And on April 13, 2017, she emailed Granger saying: "I hope that you have a wonderful Easter and nice rest of your weekend. XOXOXOXOXO!!!!" (Dkt. No. 91-26.) Granger responded, "OK, sweetie. Be safe and I'll see you next week." (*Id.*)

[4] On April 24, 2017, she emailed Granger saying: "your hair looks cute," and "[w]e make a good team and I hope you know that I plan on being close to you pretty much the whole training . . . I hope no one wonders why I am following you everywhere." (Dkt. No. 91-27.) Granger's response said: "[y]our face looks cute," and "We'll just keep 'em wondering." (*Id.*)

the end of the week of kisses, she tried to move away and push Granger off her, but he grabbed her cheeks "really hard" and kissed her.   (Vaughn Dep. 142–43, 151, 190, 251, 283.)

Between May 1 and 5, 2017, Vaughn, Granger, and other employees attended a work conference in Lexington.   At this conference, Vaughn told Brandy Disbennett-Albrecht, who was in management, about Granger's kisses.   This was Vaughn's first report of Granger's behavior to someone in management.   (Vaughn Dep. 74–75; Disbennett-Albrecht Dep. 115.)   According to Disbennett-Albrecht, Vaughn asked her not to tell anyone that Granger had kissed her on the lips.[5] (Disbennett-Albrecht Dep. 58–59.)   Vaughn alleges that during this conference, Granger commented to her that people would wonder what was going on because they were not being seen together.   (Vaughn Dep. 162.)

On May 5, Vaughn talked to Michele Crone, the Northern Regional Manager, about Granger's actions.   Crone's report from this conversation says that "[Vaughn] mentioned that she thought he tried to kiss her on the lips once," and Crone recalls that Vaughn said Granger may have tried but did not actually kiss her.   Vaughn disagrees, and says she told Crone that Granger had been kissing her and that it made her very uncomfortable.   (Vaughn Dep. 180, 191–94, 204–05; Crone Dep. 22–23, 52–53, Dkt. No. 91-8.)   Following this first conversation, Crone says that she asked Vaughn how she was doing when they talked on the phone on two or three occasions, and that Vaughn told her everything was fine and getting better.   (Crone Dep. 55.)   Vaughn denies that they spoke on the phone two or three times and denies saying "I got this, it will all work out" to Crone.

---

[5] Disbennett-Albrecht did not tell anyone about Vaughn's report until June 13, when she told Tom Herthel. By this time, Herthel already knew there was an issue between Vaughn and Granger.   (Disbennett-Albrecht Dep. 38.)

On June 1, 2017, Granger complained to Herthel, who was his supervisor, about Vaughn. Granger reported that Vaughn's Hershey's kiss and handwritten note about the Boar's Head made him uncomfortable. Granger also said that he heard Vaughn had been telling other coworkers that he had sexually harassed her. (Herthel Dep. 56–58, 81; Granger Dep. 144–45.)

Sometime between May 8 and June 1, 2017, Crone and Herthel called Vaughn to discuss what she had told Crone. According to Vaughn, she told Crone and Herthel that she was "okay right now" because they called her when she was in her cubicle and could easily be overheard, so she could not express herself like she wanted to. Vaughn also remembers that Crone was very supportive during this conversation and encouraged her to report Granger's behavior. Crone's report from this conversation states that Vaughn told her and Herthel that "everything was resolving and getting better." (Vaughn Dep. 195–99, 203–05; Herthel Dep. 66.)

Shortly after Vaughn's conversation with Herthel and Crone, Herthel and Cates, the director of Human Resources, called Vaughn. Vaughn remembers Herthel acknowledging her claim of sexual harassment against Granger and asking her when the alleged sexual harassment started. She told Herthel and Cates about the kiss in May 2016, the week of kisses in April 2017, how Granger would hug her, and his "inappropriate words" to her.[6] (Vaughn Dep. 199–202, 219.)

In early June 2017, Disbennett-Albrecht asked Vaughn if she wanted her to do anything regarding her allegations against Granger. According to Disbennett-Albrecht, Vaughn did not.

---

[6] The parties recall the timeline of these events differently. Vaughn remembers that her conversation with Herthel and Crone was sometime between May 8 and 19, 2017, and that her conversation with Herthel and Cates was the same day or a few days after (Vaughn Dep. 195–205), while Herthel remembers beginning the investigation into Granger's allegations against Vaughn and Vaughn's allegations against Granger on June 1, 2017, and calling Vaughn with Crone that same day (Herthel Dep. 66–67).

(Disbennett-Albrecht Dep. 42, 115–16, Dkt. No. 91-12.)   Also, in early June 2017, Vaughn

emailed a coworker stating: "[Granger] just went around and hugged everyone and stopped at my

door and said 'good morning.'   I just waved.   It's not like everyone will not notice.   I never had

a problem with the hugs but now I am over it all."   (Dkt. No. 91-29.)   Vaughn explained what she

meant by this email: "What I mean was he had stopped hugging me totally.   He had isolated me

once I reported him; it was obvious that he knew, and it was obvious the other people in the office

knew about it, so I was saying, I'm dealing with that part, I'm dealing with him not hugging me,

but I'm not sure if I can deal with the rest of this."   (Vaughn Dep. 210.)

On June 7, 2017, Herthel told Granger to stop hugging women at work.   (Herthel Dep.

55.)   In mid-June, Granger recalls that Vaughn came up behind him and hugged him while he was

sitting at his desk, which caused him to be "somewhat amazed . . . and actually kind of speechless."

(Granger Dep. 145–46, 185, 187.)

After investigating Granger's allegation, Herthel concluded that Vaughn used the word

"fun" in her Boar's Head handwritten note to mean sex.   He did not ask Vaughn if that is what she

meant in her note because, according to Herthel, she refused to talk to them.   Herthel concluded

from his investigation that Vaughn sexually harassed Granger based on her "flirty email[s],"

"coming up and kissing him on the cheek," and "by sending him a letter or providing him a letter

with the Hershey's Kisses indicating that she wanted to return to the Boar's Head Hotel for some

fun."   (Herthel Dep. 57–58, 77, 81.)   During Herthel's investigation into Granger's and

Vaughn's allegations, he gave Granger the choice either to work in Richmond, away from the DVS

Center of Excellence, or to retire.   Granger chose to retire.   (*Id.* at 73.)

Herthel sent an email announcing Granger's retirement on July 11, 2017.   Vaughn was

one of the recipients of this email.  (Retirement Email, Dkt. No. 91-3 at 42–43.)  However,

Vaughn claims that she did not receive the email.  (Vaughn Dep. 327.)  On July 20, 2017,

Vaughn left the Center of Excellence on short-term disability leave.  (Cates Decl. ¶ 4.)  While

she was on leave, Vaughn requested to telework.  When Vaughn made this request, she was

informed that Granger was no longer working in the DVS Center of Excellence.  (Vaughn Dep.

326–28.)  Her request to telework was denied.  (Defs.' Answers ¶ 21, Dkt. No. 4.)  Granger

officially retired on July 31, 2017, but stopped working earlier in the month and used his accrued

leave for most of the month of July.  (Cates Decl. ¶ 6; Granger Dep. 17.)  On July 31, 2017,

Herthel implemented a "no hugging policy" in the office.  (Dkt. No. 93-22.)  On October 2,

2017, Vaughn resigned.  (Dkt. No. 93-28.)

Vaughn now alleges that the Granger's behavior—and the Commonwealth's knowing

failure to take action regarding it—created a hostile work environment and caused her harm.  She

also alleges that Granger's actions placed her in apprehension of, and subjected her to, unwanted

and harmful or offensive contact constituting assault and battery.  Vaughn further alleges that the

Commonwealth is liable for Granger's actions.  (Am. Compl. ¶¶ 25–38.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A

genuine issue of material fact exists only where the record, taken as a whole, could lead a

reasonable jury to return a verdict in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S.

557, 586 (2009).  In making that determination, the court must take "the evidence and all

reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003)).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50). "While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir. 1996).

## B. Title VII Claim

Title VII prohibits practices that "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).

Vaughn claims that the harassment she endured created a hostile work environment. To establish a claim for sexual harassment under Title VII, the plaintiff must prove that "(1) the

subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." *Spicer v. Commmonwealth of Va., Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995) (en banc); *see Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

"[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The court determines "whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. . . . Title VII does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Id.* at 787–88.

### 1. Unwelcome

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor*, 477 U.S. at 68. Determining "whether particular conduct was indeed unwelcome presents difficult problems of proof and turns largely on credibility determinations committed to the trier of fact." *Id.* "Advances are unwelcome if the plaintiff regarded them as undesirable or offensive and did not solicit or incite them." *Briggs v. Waters*, 484 F. Supp. 2d 466, 478 (E.D. Va. 2007) (citing *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 647 (D. Md. 2002)).

On one hand, Vaughn said she could have "dealt" with the kissing on the cheek "for 20 to 30 years to go," and she sent Granger several emails that said "XOXO" and used friendly language, perhaps suggesting that his conduct was not unwelcome. (Vaughn Dep. 84.) There is also evidence, however, that Granger's conduct was unwelcome. When asked to explain her emails, Vaughn stated that she "was still in a phase where [she] was trying not to see it as harassment, just dealing with the situation and hoping that it will get better and work itself out," and explained that the friendly nature of her emails was not specific to Granger, but a product of the DVS culture. (*Id.* at 228.) Indeed, other employees at DVS also signed their emails to Granger with "XOXO," and Granger himself signed his emails with "XOXO." (Dkt. Nos. 93-49, 93-50.) In addition, while Granger perceived Vaughn's handwritten note to be sexually suggestive, Vaughn provided a reasonable explanation for the meaning of that note that was not flirtatious or sexual in nature. (Vaughn Dep. 280–85.) Also, although Granger asserted that Vaughn hugged him from behind and kissed him on the cheek in his office after she reported his behavior to management, Vaughn flatly denied that she ever did so. (Granger Dep. 185–87; Vaughn Dep. 272.) The court must credit her testimony on these disputes for purposes of summary judgment.

Other evidence also exists from which a reasonable jury could find the conduct unwelcome. Even before Granger allegedly kissed her on the lips for the first time, Vaughn told Chris Mackey that their interactions made her feel unsafe and uncomfortable. And, while she did not initially report Granger's actions to management, she shared what had happened with several coworkers, including Chris Mackey, Rhonda Back, Lisa Blevins, and Jonica Wilson. When Vaughn called Wilson right after the first alleged kiss on the lips, Wilson remembers that Vaughn

was "frantic, crying," and washing her mouth out in the bathroom.   (Vaughn Dep. 118–19, 296–97; Wilson Dep. 13.)   Importantly, at some point during the week of kisses in April 2017, Vaughn tried to push Granger off her and alleges that he forcefully grabbed her face and kissed her.   Thus, viewed in the light most favorable to Vaughn, her actions in response to Granger's advances throughout the relevant time period could reflect that she considered his conduct to be both undesirable and offensive.

A jury could reasonably find that Vaughn's friendliness toward Granger does not preclude a finding that his actions were unwelcome.   Therefore, the evidence raises a dispute of material fact as to whether Vaughn solicited Granger's advances and whether his behavior was unwelcome.

## 2.   Sufficiently Severe or Pervasive

"For a hostile work environment claim to lie there must be evidence of conduct severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. The plaintiff's burden of proof in this regard is twofold: she must show that her workplace was both subjectively and objectively hostile."   *Von Gunten v. Maryland*, 243 F.3d 858, 870 (4th Cir. 2001), *abrogated by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).   "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto*, 786 F.3d at 277 (internal quotations omitted).   The plaintiff can introduce evidence of other instances of harassment of which she was not aware at the time to show that the workplace was objectively hostile because it is "highly probative of the type of workplace environment she was subjected to, and whether a reasonable employer should have discovered the sexual harassment."   *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009).

"[E]ven where individual instances of sexual harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation. This totality-of-circumstances examination should be viewed as the most basic tenet of the hostile-work-environment cause of action. Hence, courts must be mindful of the need to review the work environment as a whole, rather than focusing single-mindedly on individual acts of alleged hostility." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563 (6th Cir. 1999). While "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test," at the summary judgment stage, the court's task "is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316–17 (4th Cir. 2008).

Viewing the work environment at DVS as a whole, the evidence depicts a work culture in which hugging and kissing was unrelenting and widespread. Many DVS female employees received hugs or kisses from Granger or witnessed him hugging or kissing other female employees. Notably, Rhonda Back and Brandy Disbennett-Albrecht stated that Granger kissed them on the lips, Pamela Zirkle saw Granger kiss another employee on the lips, and Granger himself admitted that he kissed two of his coworkers on the lips. In addition, management saw Granger hug most, if not all, DVS employees, and kisses on the cheek and forehead were frequent. (*See supra* Mem. Op. at 3–4.) It is within this environment—permeated with hugging and kissing—that Vaughn alleges Granger kissed her on the lips once in 2016 and every day for one week in 2017, and that she complained to several coworkers about Granger's behavior and physically resisted him in April 2017.

At the summary judgment stage, the court's task is not to weigh the evidence, but to "examine whether the record contains proof from which a reasonable trier of fact could conclude 'that the environment was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere.'" *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 209 (4th Cir. 2014) (quoting *Equal Emp't Opportunity Comm'n v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009)). Looking at the record here, a reasonable jury could find that the DVS workplace was both objectively and subjectively hostile. Indeed, the evidence clearly reflects that hugging and kissing was pervasive and embedded in the workplace culture of DVS. Taking into account the numerous incidents of this behavior, a jury could readily conclude that a reasonable person could find this work environment, in which hugging and kissing was commonplace and expected to be given and received, to be hostile or abusive. And, a reasonable trier of fact could also conclude that a reasonable person in Vaughn's position would believe, as she did, that reporting Granger's behavior seemed pointless because she "didn't think nobody would do anything because it was common knowledge that he was doing it." (Vaughn Dep. 188.)

While defendants highlight that some DVS employees did not find Granger's behavior to be harassing and argue that the workplace was therefore not objectively hostile, the possibility that Granger's conduct may not have been sufficiently severe or pervasive does not mean that a reasonable jury could not conclude otherwise. For purposes of summary judgment, it is sufficient that Vaughn's proffered evidence creates a genuine issue of fact as to whether her environment was sufficiently severe or pervasive to alter the conditions of her employment.

### 3. Imputable to the Employer

An employer is liable when "it had actual or constructive knowledge of the existence of a

sexually hostile work environment and took no prompt and adequate remedial action." *Spicer*, 66

F.3d at 710 (quoting *Swentek v. USAIR, Inc.*, 830 F.3d 552, 558 (4th Cir. 1987)). The Fourth

Circuit has found that liability may be imputed to an employer if the employer "reasonably should

have anticipated that the plaintiff would become a victim, but failed to take action reasonably

calculated to prevent the harassment." *Alexander v. Alcatel NA Cable Sys., Inc.*, 50 F. App'x 594,

602 (4th Cir. 2002) (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 106 (4th Cir. 1989)). Indeed,

"the law imposes a duty on the employer to take adequate steps to prevent harassment, not merely

to act after the event." *Id.* (quoting *Paroline*, 879 F.2d at 106 (internal quotations omitted)).

As set forth in the factual summary, DVS was well aware of much of Granger's conduct.

Cates said it was common knowledge that Granger hugged employees, Herthel saw Granger hug

most DVS employees, and Disbennett-Albrecht saw Granger hug almost everyone in the office,

saw him kiss Jenny White on her head, and was kissed by Granger on the cheek and on the lips. In

this environment, where management knew that Granger hugged everyone and even kissed some

employees, the jury could find that DVS should have reasonably anticipated the possibility that

Granger's behavior could result in or create an acceptable environment for an incident of sexual

harassment. However, DVS did not take action until Granger complained about Vaughn's

behavior to Herthel, prior to which it knowingly allowed this workplace environment to continue

without reasonable foresight of the potential consequences. Therefore, a reasonably jury could

find DVS liable for Granger's conduct.

## C. *Faragher/Ellerth* Affirmative Defense

Even if Vaughn can establish a claim for sexual harassment under Title VII, the

Commonwealth asserts that it is entitled to rely on the *Faragher/Ellerth* affirmative defense.

16

When the harasser is the victim's supervisor, as is the case here, the defense is only available if no tangible employment action is taken. *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013); *Boyer-Liberto*, 786 F.3d at 278. If no tangible employment action is taken against the plaintiff, then "the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424 (citing *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

### 1.   No tangible employment action was taken against Vaughn

A "tangible employment action" is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761; *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 331 (4th Cir. 2012) (quoting same).

Vaughn contends that the Commonwealth is precluded from asserting this affirmative defense because she was constructively discharged, constituting an adverse employment action. "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.' When the employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Green v. Brennan*, 136 S. Ct. 1769, 1776–77 (2016) (quoting *Pa. State Police v. Suders,* 542 U.S. 129, 141–43 (2004)). For constructive discharge, the Fourth Circuit has interpreted *Green* to no longer require a plaintiff to establish deliberateness or "a subjective

intent to force a resignation," but only "objective 'intolerability'—'circumstances of discrimination so intolerable that a reasonable person would resign.'" *U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017) (quoting *Green*, 136 S. Ct. at 1779). "Mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Melendez v. Bd. of Educ. for Montgomery Cty.*, 711 F. App'x 685, 688 (4th Cir. 2017) (internal quotations and citations omitted).

In support, Vaughn posits that Granger mocked her by hugging and kissing other employees in front of her and that she was "isolated and shunned" by coworkers who were allegedly upset with her for reporting Granger's behavior. Then, because her request to work in a different environment from the one in which she was "harassed" and "retaliated against" was denied, she was forced to resign. (Mem. Supp. Opp'n Mot. Summ. J. 17–18.)

Even if Vaughn did not receive Herthel's email announcing Granger's retirement before she went on disability leave, when she requested to work in a different office, she knew that Granger had retired. Despite this, she argues that she had "no option but to resign." With Granger gone, the only reason she has provided for her resignation in October 2017—a few months after Granger retired—was the alleged behavior of her coworkers. However, looking to the record, she overstates the intolerability of her working conditions. (*See* Disbennett-Albrecht Dep. 45–46.) Tension and awkwardness in the office simply do not amount to objective intolerability. Further, such actions by her coworkers "do not even constitute the less onerous adverse action for purposes of a retaliation claim," so they cannot constitute a "tangible employment action" for a harassment claim. *McKinney v. G4S Gvmt. Sols., Inc.*, 179 F. Supp. 3d

609, 622 (W.D. Va. 2016) (internal quotations and citations omitted); *see Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 270–72 (4th Cir. 2001) (holding that the plaintiff's allegations of "uncivility" by her co-workers, "most of which constituted refusals to speak to her," did not constitute an adverse action to support a retaliation claim).   Therefore, DVS did not take any tangible employment action against Vaughn.

### 2. The Commonwealth is not entitled to summary judgment on its affirmative defense

Having determined that the affirmative defense is not foreclosed as a result of some tangible employment action, the court turns to whether the Commonwealth can establish, as a matter of law, its affirmative defense.   To do so, the Commonwealth is required to show that it exercised reasonable care to prevent and correct any harassing behavior and that Vaughn unreasonably failed to take advantage of the preventive or corrective opportunities that it provided. *Vance*, 570 U.S. at 424.   "[D]issemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment.   Evidence showing that the employer implemented the policy in bad faith or was deficient in enforcing the policy will rebut this proof."   *Matvia*, 259 F.3d at 268 (internal quotations and citations omitted).   Additionally, "[t]he *Ellerth/Faragher* defense, in essence, imposes a duty on the victim to report her supervisor's harassing behavior to the employer." *Boyer-Liberto*, 786 F.3d at 278.

DVS has an anti-harassment policy that defines harassment as "any unwelcome verbal, written, or physical conduct that either denigrates or shows hostility or aversion towards a person on the basis of . . . sex . . . that (1) had the purpose or effect of creating an intimidating, hostile, or

offensive working environment." The policy directs employees as to how to make a complaint of unlawful employment discrimination.[7] It is undisputed that Vaughn read and received this policy at the start of her employment with DVS. (Employee Handbook, Dkt. No. 91-3 at 35; Dkt. No. 91-3 at 10.) Nonetheless, there are material disputes of fact that prevent DVS from establishing, as a matter of law, that it took reasonable care to prevent and correct any harassing behavior because there is evidence from which a reasonable jury could find that it was deficient in enforcing it. Specifically, DVS's failure to act before Vaughn reported Granger's behavior is material.

If an employer's inaction "emboldens the harasser to continue his misconduct, the employer can be deemed to have 'adopted the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy.'" *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir. 2001) (quoting *Faragher*, 524 U.S. at 789)). Before management received Vaughn's complaint, a jury could reasonably find that DVS was aware of Granger's persistent and pervasive hugging and kissing. Although Disbennett-Albrecht had seen Granger hug almost everyone in the office and he had kissed her on the lips, still, DVS management took no action whatsoever to address his behavior. The fact that Granger's hugs and "greeting" kisses were frequent and given to almost everyone—which DVS knew—does not mean that his behavior was objectively non-offensive. A reasonable jury could find that DVS's failure to address Granger's behavior before April 2017 emboldened him to go a step further and kiss Vaughn on the lips every day in a single week. The accepted workplace culture of regular hugging and kissing at DVS may have given Granger free reign to repeatedly and forcefully kiss Vaughn on the lips. *See*

---

[7] The DVS employee handbook states that employees "seeking to remedy workplace harassment may file a complaint with the agency human resource director, the agency head, their supervisor(s), or any individual(s) designated by the agency to receive such report." (Employee Handbook, Dkt. No. 91-3 at 6.)

*Alexander*, 50 F. App'x at 601–02.

At the hearing, defendants highlighted that Vaughn asked Disbennett-Albrecht and Crone not to take action in response to her complaints about Vaughn. In support, they cited to *Hardage v. CBS Broadcasting, Inc.*, in which the Ninth Circuit affirmed the district court's conclusion on summary judgment that the defendant was entitled to assert the *Faragher/Ellerth* affirmative defense to plaintiff's sexual harassment claim. 427 F.3d 1177 (9th Cir. 2005). There, when the plaintiff reported his supervisor's behavior, he was vague and did not give details about the harassment, and specifically and repeatedly requested that the company not make use of its remedial and preventative procedures. Prior to his report, there was no evidence that the company knew of the supervisor's flirtatious behavior, and the majority of the incidents between the plaintiff and his supervisor occurred outside of the office. *Id.* at 1181–82. Because his employer immediately and repeatedly contacted the plaintiff to address his complaints, and the plaintiff specifically requested that the defendant not investigate his admittedly minimal and vague reports, the employer's actions were sufficient to show that it took reasonable care and that the plaintiff failed to take advantage of the employer's preventive or corrective opportunities. *Id.* at 1185–88.

In contrast, here, DVS was clearly on notice of some of Granger's behavior before Vaughn complained to Disbennett-Albrecht in May 2017. The record reflects that Granger's hugs and kisses that were "incidental" to his hugs were well-known and frequent. As such, DVS cannot contend that Vaughn's apparent requests that it not investigate her complaints demonstrate that she did not make use of its anti-harassment policies and procedures. Rather, there is a dispute of material fact regarding whether DVS failed to exercise reasonable care up until the time that she

finally reported his behavior by allowing Granger to continue acting as he did.   Indeed, from Vaughn's perspective, DVS's awareness and lack of response discouraged her from reporting Granger's behavior earlier than she did, believing that no one "would do anything because it was common knowledge that he was doing it."   (Vaughn Dep. 188.)

Therefore, DVS's awareness of Granger's behavior leading up to Vaughn's report of the April 2017 incident creates a dispute of material fact as to whether DVS exercised reasonable care to prevent and correct any harassing behavior.   For all of these reasons, DVS has not established, as a matter of law, its affirmative defense to Vaughn's hostile work environment claim.

## D.  Assault and Battery Claim

### 1.  James Granger

A battery is "an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003).   Assault entails "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery."   *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 411 (4th Cir. 2013) (quoting *Koffman*, 574 S.E.2d at 261).   "Under Virginia law, the tort of assault is 'the threat of bodily harm.'"   *Glover v. Oppleman*, 178 F. Supp. 2d 622, 641 (W.D. Va. 2001) (quoting *Collins v. Franklin*, No. 2:00-cv-00044, 2001 WL 589029, at *2 (W.D. Va. May 29, 2001)).   Although battery and assault "go together like ham and eggs, the difference between them is that between physical contact and the mere apprehension of it.   One may exist without the other."   *Id.* (quoting *Koffman*, 574 S.E.2d at 261).

Viewed in the light most favorable to plaintiff, the evidence supports a reasonable

22

inference that Granger committed an unwanted touching that caused harm or offense. Vaughn stated in her deposition that he forcefully grabbed her cheeks and kissed her after she tried to move away from him and push him off her. (Vaughn Dep. 142–43, 151, 190, 251, 283.) Her actions clearly demonstrate that his touching was unwanted and that she did not consent to his kissing. Additionally, looking to the time between when Granger grabbed her face and when he kissed her, a reasonable jury could find that Granger intended to cause an offensive contact and that Vaughn reasonably apprehended an imminent battery. Accordingly, there is a dispute of material fact as to Vaughn's assault and battery claim against Granger, and the court will deny summary judgment on this claim.

### 2. The Commonwealth of Virginia

Having established that the assault and battery claim goes forward as to Granger, the court turns to Vaughn's claim against the Commonwealth under the doctrine of *respondeat superior*.

In her amended complaint, Vaughn alleges that "Granger used his power and authority as plaintiff's superior to carry out the assaults and batteries described herein," and that the "acts of defendant James Granger, Sr. constitute assault and battery under the common law of the Commonwealth of Virginia, for which defendants Commonwealth of Virginia and James Granger, Sr. are liable under Virginia law." (Am. Compl. ¶¶ 35–36.) In a footnote of its summary judgment brief, the Commonwealth simply states that Vaughn failed to allege the elements of vicarious liability and "any facts supporting her bare allegation that the Commonwealth is somehow liable." (Mem. Supp. Mot. Summ. J. 23 n.9.) When Vaughn expanded on her allegations in her response in opposition, arguing that DVS management condoned an environment that allowed Vaughn to be sexually assaulted, and that the job duties entrusted to

Granger gave him "ready access" to Vaughn, (*id.* at 24), DVS stood on the same argument and argued in the alternative that Granger's actions deviated from his duties and thus fell outside the scope of his employment, (Reply Br. Supp. Mot. Summ. J. 24, Dkt. No. 97).

Notwithstanding the fact that this case is now at the summary judgment stage, because the Commonwealth argues that Vaughn's allegations in her amended complaint are insufficient, the court will look to what is required to state a claim. Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard imposed by Federal Rule of Civil Procedure 8(a) will be met if the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007)). Under Virginia law, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018) (quoting *Plummer v. Ctr. Psychiatrists, Ltd.*, 476 S.E.2d 172, 174 (Va. 1996)).

Under these standards, the court concludes that Vaughn has adequately alleged that the Commonwealth is liable under the doctrine of *respondeat superior*. Stating that "Granger used *his power and authority as plaintiff's superior to carry out the assaults and batteries* described herein," and that the "acts of defendant James Granger, Sr. constitute assault and battery . . . for which defendants Commonwealth of Virginia and James Granger, Sr. are liable under Virginia law," Vaughn satisfied the pleading standard. (Am. Compl. ¶¶ 35–36 (emphasis added).)

Regardless, at the summary judgment stage, the court must look to whether there is a genuine dispute of material fact, not whether Vaughn has satisfied the pleading standard.

Turning to the substance of Vaughn's allegations against the Commonwealth, there is a dispute of material fact as to whether Granger was acting within the scope of his employment when the tortious acts were committed. The heart of this inquiry is "whether the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business." *Lacasse v. Didlake, Inc.*, 712 F. App'x 231, 236 (4th Cir. 2018) (quoting *Gina Chin & Assocs., Inc. v. First Union Bank*, 537 S.E.2d 573 (Va. 2000)). Here, a reasonable inference can be drawn from the evidence that Granger used his supervisory position at DVS to hug all the employees and kiss some of them, and that DVS allowed him to engage in this behavior because of his position and experience. Thus, the facts do not conclusively establish that Granger was not acting within the scope of his employment when he allegedly committed assault and battery against Vaughn. [8]

In conclusion, the court will deny summary judgment on Vaughn's claim against the Commonwealth for assault and battery under the doctrine of *respondeat superior*.

### III. CONCLUSION

For the foregoing reasons, the court will deny defendants' motion for summary judgment. A separate order will be entered.

Entered: November 27, 2019.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[8] Although the court questioned the Commonwealth about the sovereign's immunity from liability for the intentional torts of its employees at the hearing, the Commonwealth did not assert the defense and rested its argument on Vaughn's failure to properly allege the elements of vicarious liability in her amended complaint.